IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HAKIM NASEER,

                              Plaintiff,

v.

THOMAS BELZ, C/O GALLINGER,
C/O WIEGEL, MARY MILLER,
SGT. WALLACE, CAPTAIN MASON,
and ELLEN RAY,

                              Defendants.

ORDER

13-cv-821-jdp[1]

---

In this case, pro se plaintiff Hakim Naseer, an inmate currently incarcerated at the Green Bay Correctional Institution, is proceeding on claims that prison staff at the Wisconsin Secure Program Facility retaliated against him for filing inmate complaints by contaminating his food. Currently before the court are plaintiff's motion for preliminary injunctive relief and defendants' motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies.

Shortly after briefing was completed on the preliminary injunction motion, plaintiff was transferred to the Green Bay Correctional Institution, away from the defendants in this case, so I will deny his PI motion as moot. Plaintiff has also filed a motion for sanctions against defendants for fabricating evidence submitted in conjunction with the PI motion, which, after addressing more fully below, I will deny.

As for the exhaustion motion, plaintiff has filed a series of motions relating to perceived interference by prison staff in plaintiff's attempts to obtain a legal loan and complete his materials opposing the motion. For instance, plaintiff has filed a motion for an order requiring prison staff to provide him with notary services so that he can apply for a legal loan, Dkt. 38, a

---

[1] This case was reassigned to me pursuant to a May 19, 2014 administrative order. Dkt. 44.

motion "to stay the proceedings due to acts of conspiracy" in which he stated that he could not submit his opposition materials on time because he was being denied pen inserts, Dkt. 42, and a motion for extension of time to file his opposition materials late because of further problems in obtaining a legal loan, Dkt. 47. However, plaintiff followed up those motions with his opposition materials and a motion "to accept [his] late submissions," Dkt. 49-52. Accordingly, I will grant plaintiff's motion to accept his opposition materials and deny as moot his previous motions regarding his difficulties in completing and submitting the materials. After considering the exhaustion motion, I conclude that defendants fail to address important issues regarding three grievances filed by plaintiff, so I will direct the parties to submit a supplemental round of briefing on exhaustion.

ANALYSIS

**1. Exhaustion**

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and "applies to all inmate suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The purpose of administrative exhaustion is not to protect the rights of officers, but to give prison officials a chance to resolve the complaint without judicial intervention. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537-38 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation").

Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In Wisconsin, the administrative code sets out the process for a prisoner to file a grievance and appeal an adverse decision. Wis. Admin. Code § DOC 310.07 (laying out four-step process for inmate grievance review system). A failure to follow these rules may require dismissal of the prisoner's case. *Perez*, 182 F.3d at 535. However, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Because exhaustion is an affirmative defense, defendant bears the burden of establishing that a plaintiff failed to exhaust his available remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The parties have addressed the exhaustion issue twice, first in briefing plaintiff's motion for preliminary injunction and then again in formally briefing defendants' motion for summary

judgment based on plaintiff's failure to exhaust. In conducting this briefing the parties present three different sets of grievances.

The first is a series of grievances filed in 2010 and 2011 during a previous stint of plaintiff's at WSPF. (This case is about defendant officers Belz, Gallinger and Wiegel contaminating plaintiff's food with "household products, unsanitary floor dust, hazardous human hair from an unknown body, and lint ball fabrics that smell of mild urine" in late 2013. Dkt. 5 at 2.) At least one of these grievances (alleging that defendant Belz told plaintiff that he placed poison in his food) was investigated and prison officials determined that the allegations were unsubstantiated. Although it appears that this grievance was exhausted, it exhausted claims from years before the incidents at issue during a different stint of plaintiff's at WSPF, so it is difficult to see how it could serve to exhaust his current claims.

The second set of grievances is a series of four grievances filed between September and November 2013, which defendants state are the only grievances potentially related to the issues of this case where a "final decision" was issued before plaintiff filed his complaint.[2] All of these grievances were rejected on what appears to be appropriate procedural grounds at the outset rather than on the merits, which means that plaintiff did not properly raise his claims in these filings. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (generally, where grievance is rejected on procedural grounds, rather than on merits, inmate has failed to properly exhaust).

The final set of grievances are three filed by plaintiff that are more on point. On October 10, 2013, plaintiff filed the following grievance:

---

[2] Plaintiff suggests that defendants must be lying about the number of grievances about food contamination he has filed, but the only additional evidence of grievances he has submitted in briefing either his preliminary injunction motion or defendants' summary judgment motion is (1) a list of grievances filed in 2009 through 2011, which are too old to exhaust his current claims; and (2) a series of three more recent grievances, which I will address below.

4

> C/O T. Belz made life-threatening threats to take immediate action against my food trays by contaminating them w/ outside environmental poisons!

Dkt. 52 Exh. A. On October 25, 2013, plaintiff filed the following grievance:

> Due to C/O Gallinger's and C/O Wiegel's reckless contamination exposures to my food trays I am urinating out yellow mucus, having diarrhea problems, constant vomiting and irregular weight-loss complications!!

Dkt. 14 Exh F, Dkt. 52 Exh. B. On November 13, 2013, plaintiff filed the following grievance:

> C/O T. Belz switch my food tray around while making references to food contamination. Wherein C/O Parr had my food tray in his hands. However, C/O T. Belz told him to put it down while he grabs another one while saying, "This one was specifically made for him." <2> hours later, I started vomiting!!

Dkt. 14 Exh. G, Dkt. 52 Exh. C.

Although the first of these grievances was assigned a number (WSPF-2013-19663), neither side has placed anything in the record explaining how the grievance was resolved. As for the second two grievances, neither was assigned a case number. Defendant Ray explains that neither grievance was accepted for filing because each violated the two-grievances-per-week limit stated in Wis. Admin. Code § DOC 310.09(2).[3] That provision states as follows:

> Inmates may not file more than 2 complaints per calendar week, except that the ICE may waive this limit for good cause. The ICE shall exclude complaints that raise health and personal safety issues from this limit.

Ray gave the following reasons for rejecting the grievances under this rule:

> In making the determination to limit the complaints that [plaintiff] attempted to file on October 25, 2013 and November 12, 2013, I carefully considered whether they involved his health or safety. In my opinion, the complaints raised issues about security. In addition, I took into account that from 2009 through 2013, [plaintiff] submitted a total of 748 complaints, including 438 that were accepted and filed and 310 which were returned. Furthermore,

---

[3] I glean defendant Ray's explanation from her affidavit submitted in support of defendants' opposition to plaintiff's motion for preliminary injunctive relief, Dkt. 24. Defendants do not address these grievances in their briefing on the PI motion or their own exhaustion motion, other than by inference; they make clear that only the four grievances named as the "second set" of grievances received a "final decision."

5

nothing prevented [plaintiff] from filing an inmate complaint about the same issue at anytime during the following week.

Dkt. 24 at 4-5.

Given that it is defendants' burden to show that plaintiff has failed to exhaust his administrative remedies, their failure to submit a reply brief discussing this last set of grievances is troubling. Defendants do not explain how grievance no. WSPF-2013-19663 was resolved, which could by itself be enough to deny the summary judgment motion. Further, defendant Ray's explanation for why plaintiff's two unnumbered grievances were not filed raises further questions, even given the deference this court has applied to DOC staff interpreting grievance rules in the past, *see, e.g., Ajala v. Tom*, 2014 WL 905467, *4 (W.D. Wis. Mar. 7, 2014) ("courts must give deference to an agency's interpretation of its own regulation, but . . . a court could reject an interpretation that was arbitrary, clearly erroneous or otherwise deprived a prisoner of a meaningful opportunity to complete the grievance process").

The grievance procedures allowed plaintiff to file a complaint regarding "health" or "personal safety" even if he had already reached the two-grievances-per-week limit. Defendant Ray's determination that his grievances raised "security" issues instead is difficult to square with the actual allegations of the grievances. Nor should it have mattered that plaintiff was a notorious voluminous filer of grievances; state officials cannot deny grievances on standards not stated in the rules. *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."). Of course, even had Ray "rejected" the grievances, in order to exhaust his administrative remedies, plaintiff would have had to appeal the rejection under DOC rules. *See Burrell*, 431 F.3d at 285. But Ray does not appear to have "rejected" the

grievances; she simply returned them to plaintiff without filing them, and there does not appear to be an appeals process for such a situation.

"Prison officials may not take unfair advantage of the exhaustion requirement, . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804 at 809 (7th Cir. 2006). The fact that plaintiff appears to have properly filed all three of the grievances in this third set suggests that plaintiff was unfairly prevented from exhausting these grievances. However, because of the murky state of the record coupled with the parties' failure to address the questions surrounding these three grievances in their briefing, I will request a round of supplemental briefing before ruling on defendants' summary judgment motion. Defendants' failure to address these questions to the court's satisfaction may result in denial of their summary judgment motion.

The dispositive motions deadline is current set at December 19, 2014. Given the extra time that will be needed to resolve the exhaustion question, this deadline will need to be moved. Because there is a fair amount of leeway in the current schedule (trial is currently schedule for July 27, 2015), I will set a new dispositive motions deadline of February 20, 2015.

**2. Motion for sanctions**

Finally, plaintiff has filed a motion for sanctions against defendants for fabricating evidence in conjunction with briefing plaintiff's motion for preliminary injunction. In 2011, during a previous stint at WSPF, plaintiff had lab work done indicating that traces of leukocytes[4] in his urine. Plaintiff asked a doctor at the prison, Dr. Cox, what could have been

---

[4] Leukocytes are white blood cells. *See* http://www.nlm.nih.gov/medlineplus/ency/article/003643.htm (last visited Oct. 27, 2014).

the cause. Cox responded by stating that "it's most likely a contaminant, or over-reading of chem strip by technician." Dkt. 14 Exh. C. I understand plaintiff to believe that the test confirms that his food was poisoned in 2011. However, in responding to the motion for preliminary injunction, defendants submitted an affidavit of defendant Ray in which she stated that "he indicated that when he used the word 'contaminant' in the HSR response, he meant that a contaminant from [plaintiff's] skin could have entered the sample when he did the urine catch." Dkt. 24 at 3. Plaintiff believes that this is false testimony from Cox and asks for sanctions, a second opinion of the test results, and a "detailed explanation of the true meaning" of Cox's statement.

Taking aside that it is not clear what evidentiary value plaintiff's test results from three years ago would have to his claims about defendants' actions in late 2013, I must deny the motion for sanctions because plaintiff falls far short of showing that defendants should be sanctioned for falsifying evidence. The mere fact that defendants have produced testimony unfavorable to plaintiff does not mean that they are lying. At either the summary judgment or trial stages of the case, plaintiff is free to present evidence disputing defendants' explanation for the test result (for instance, plaintiff points out that Cox never ordered another test, which might seem reasonable to do if the first test was ruined by a contaminant). At the same time, because plaintiff is not a medical professional, he should be aware that he will not be able to present his own opinions about medical issues; this is the function of medical expert testimony. He is free to testify about his own first-hand experiences, such as the symptoms he felt.

ORDER

IT IS ORDERED that:

1. Plaintiff Hakim Naseer's motion for preliminary injunctive relief, Dkt. 1, is DENIED as moot.

2. Plaintiff's motion for notary services, Dkt. 38, motion to stay the proceedings, Dkt. 42, and motion for extension of time, Dkt. 47, are DENIED as moot.

3. Plaintiff's motion to accept his materials opposing defendants' motion for summary judgment, Dkt. 49, is GRANTED.

4. Defendants may have until November 11, 2014 to submit a supplemental brief and any evidentiary materials necessary to resolve the issues raised in this order regarding plaintiff's failure to exhaust his administrative remedies. Plaintiff many have until November 25, 2014 to submit a supplemental response. The parties may simply refer to attached evidence in their briefs; they need not create new "proposed findings of fact" documents.

5. Plaintiff's motion for sanctions, Dkt. 54, is DENIED.

6. The dispositive motions deadline is moved to February 20, 2015.

Entered this 30th day of October, 2014.

BY THE COURT:

/s/
JAMES D. PETERSON
District Judge